Nash, C. J.
 

 The controversy in this case, turns entirely upon the termination of the third line of the conveyance from Cheers to the plaintiff. The call in that deed for the third line, is “thence south, across the swamp to the mouth of Bull-branch, one hundred and seventy-five poles, to William Cause’s line.” The closing line is, then east three hundred poles to the beginning. The second line of the Cheers deed and Bull-branch, for the purposes of this case, are ascertained, and the question is, where is the terminus of the third line? — is it
 
 *225
 
 where the distance, called for in the deed, gives out, or is the line to be continued to the letter E in the diagram? The distance gives out where that line leaves Bull-branch, and to go to E extends it one hundred and seventy poles further than the call of the deed. The plaintiff insists he is entitled to go to E, because William Gause lived in a field designated in the plot, and had a fence around it.
 

 It was in evidence, by the surveyor, that when he ran this third line, Thomas E. Gause, who was one of the chain-carriers when the Cheers tract was originally surveyed, pointed out the terminus at the letter E, and also the place where an old fence stood, enclosing the field where William Gause lived. The surveyor further testified that there was no marked line of William Gause to be found, either in running from the point where the distance gave out, or from the latter to E; nor was there any line marked from E to the beginning. He further stated that, in running from the point where the call of the deed gave out, the course to the beginning was due east as called for, but that, in running from E, the course to get home was north-east.
 

 Upon the point, as to the terminus of the third line, his Honor instructed the jury “that, as the witnesses could not point out the William Gause line, in locating the grant to James Cheers, they must stop at the point at which the distance gave out, although the witness stated where the line was actually run at the time the original survey was made, and where the stake was planted.” In this opinion we concur.
 

 Wery few subjects have occupied more of the time of ourCourts, or been more carefully examined than that of boundary. Connected with the possession of the most valuable portion of property, the establishment of fixed principles, whereby disputes concerning the ownership of land might be, in part, governed and controlled, became at an early day, in the settlement of the country, a matter of great importance. In the administration of justice on this subject, our Courts were compelled, in many instances, to depart from the rules of the common law, and to build up a system suited to the situation of
 
 *226
 
 the country. Among these rules or principles are the following : Natural objects, of a permanent kind, called for in a grant or deed, will control both course and distance,
 
 - v. Beatie,
 
 1 Hayw. 376. Where a junior grant or deed calls for a line of an elder grant or deed, the line shall be extended to it, regardless of the distance or course, provided the lines be sufficiently established,
 
 Cherry
 
 v. Slade, 3 Murph. 82. But if they were not marked, then the call should be disregarded and the course and distance pursued,
 
 Carson
 
 v. Burnett, 1 Dev. & Bat. 516,
 
 Reed
 
 v.
 
 Shenck,
 
 2 Dev. 415. The terminus of a line must be either the distance called for in the conveyance, or some permanent monument, which will endure for years, the establishment of which was cotemporaneous with the execution of the deed. A stake is'not such a monument, and evidence of its being made and fixed at the time the land was surveyed, is not admissible to control the course and distance, 3 Dev. 65,
 
 Shenck
 
 v.
 
 Reed.
 
 The distance called for in a deed, must govern, unless there be some other description, less liable to mistake, to govern it,
 
 Kissam
 
 v.
 
 Gaylord,
 
 Busbee 116.
 

 These are some of the rules or principles governing questions of boundary. The deed from Gause to the plaintiff calls for no natural object as a boundary after passing Bull-branch; the third line, the terminus of which is the point in dispute, calls for a course and distance to Gause’s line to a stake. Here there is something which, if it existed, would control the course and distance, but it is not shown that that line ever existed. Thomas E. Gause, a chain-carrier, in locating and surveying the Cheers grant, states that the line was actually run from Bull-branch to the point designated in the diagram, and that at that time William Gause was living in the field where the stake was planted, but he does not say that a single tree was marked, and the surveyor states that he discovered no lines either on the line, after leaving Bull-branch, or in running from E to the beginning; he further states that he ran the line from Bull-branch to the spot, at which the other witness stated was the place where the stake was planted in the original survey. If that line had been marked, in the original
 
 *227
 
 survey, it would have controlled the course and distance, provided the line of Gause, which was called for as its terminus, could have been established : — but in the absence of any natural boundary, or marked line in the establishment of the Gause line,' there is nothing to control the course and distance. But there is another consideration, the call for the fourth, or home line is, from the termination of the third line, east to the beginning ; the surveyor states that running from the point where the distance gave out, to the beginning, answers to the call in the grant, while running from E the course is north-east. There is no evidence that William Gause owned any land above the east line.
 

 There is no error, and the judgment is affirmed.
 

 Per CuRiAM. Judgment affirmed.